Filed 2/24/14  Michelle M. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| MICHELLE M., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF STANISLAUS COUNTY, <br><br> Respondent; <br><br> STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, <br><br> Real Party in Interest. | F068571 <br><br> (Super. Ct. No. 510634) <br><br><br> **OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Ann Q. Ameral, Judge.

Thomas P. White, for Petitioner.

No appearance for Respondent.

John P. Doering, County Counsel, and Robin Gozzo, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]     Before Cornell, Acting P.J., Gomes, J. and Kane, J.

Petitioner Michelle M. (mother) seeks review by extraordinary writ of the juvenile court's order setting a date of May 8, 2014, for a permanency planning hearing (Welf. & Inst. Code, § 366.26)[1] for her son, Jordan. The memorandum attached to the petition, however, raises issues that arose out of the 12-month and 18-month review hearings, but none that arose out of the December 16, 2013, hearing where the permanency planning hearing was set. We deny the petition.

## FACTS

On January 26, 2012, then four-year-old Jordan, and his three half siblings, then 15-year-old Miranda, 13-year-old Savannah, and 18-month-old R., were detained.

On January 30, 2012, the Stanislaus County Community Services Agency (agency) filed a petition with respect to Jordan and his siblings alleging that their parents failed to protect them (§ 300, subd. (b)), left them without any provision for support (§ 300, subd. (g)), and that they were at substantial risk of abuse or neglect because of prior sibling abuse or neglect (§ 300, subd. (j)). The petition also alleged that mother had a long history of drug abuse and domestic violence in her relationships and that Jordan's father (father) had a history of methamphetamine use and domestic violence. Father's whereabouts were unknown.

According to the detention report filed in conjunction with the petition, on January 2, 2012, after mother and R.'s father were arrested for robbery, they made arrangements for R. to live with his adult half sister, while Jordan remained at the residence with his two older sisters, with an adult neighbor checking on them. On January 3, 2012, a social worker who went to the residence found it did not have electricity or running water and two cases of needles and syringes within reach of the children. Jordan, Miranda and Savannah were eventually placed in foster care together and R. was placed with his adult half sister.

---

**1** All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

On March 21, 2012, the court sustained the petition and approved a reunification case plan by the agency.

On April 10, 2012, father passed away in Las Vegas.

On April 21, 2012, mother began residing at Redwoods Family Center (Redwoods), a clean and sober living facility, with her newborn daughter, A.M., where she participated in a drug treatment program specifically tailored to mothers with children under the age of five.

On April 22, 2012, Jordan and his two half sisters were placed in another foster home.

On June 1, 2012, during an interim review hearing, the court authorized overnight visits with mother in a clean and sober living facility at the discretion of the agency.

In July 2012, Jordan spent a week with mother because his foster parents were only able to take Miranda and Savannah on a trip they took that month.

On September 13, 2012, at the six-month review hearing, the court authorized continuation of reunification services and a trial visit for Jordan with mother at the discretion of the agency. On September 14, 2012, Jordan went to live with mother at Redwoods for a trial visit.

On March 6, 2013, at the 12-month review hearing, the court ordered reunification services continued. It also found that the return of Jordan to mother would create a substantial risk of detriment to Jordan's physical and emotional well-being.

In April 2013, a teacher at First Step reported that the previous week mother told her that another resident's child had acted inappropriately with Jordan by putting her hands in Jordan's shirt and massaging his chest at a slumber party in the other resident's room. Although mother had previously shared "inappropriate sexual concerns" about the other resident's child, she nevertheless allowed Jordan to attend the slumber party in the other resident's room. Mother also told the teacher that after the party Jordan talked

3

about wanting to play the "humping game." Additionally, Redwoods staff had previously spoken with mother about Jordan trying to "hump" his younger sibling, R.

On April 24, 2013, staff from Redwoods observed Jordan unsupervised, under a table with the child of another resident, with his pants down and the other child's mouth on Jordan's private parts. This occurred shortly after the manager at Redwoods had a meeting with mother to discuss the importance of supervising her children at all times.

On May 2, 2013, Jordan's trial visit with mother was terminated and he was placed into foster care because mother was struggling with her own mental health issues, struggling to arrange child care and manage her own services, and she was not providing enough parenting or supervision for Jordan.

On August 22, 2013, at the 18-month review hearing, the court terminated reunification services. Nevertheless, it ordered that mother was to continue to have one weekly visit with Jordan of up to two hours in duration. The court also allowed Jordan to have overnight and extended visits with mother in a clean and sober living environment at the discretion of the agency, ordered a plan of long-term foster care, and set a review hearing (§ 366.3) for February 18, 2014.

On September 3, 2013, mother filed a notice of appeal relating to issues that arose at the 12-month and 18-month review hearings (*In re Miranda M. et al.*, F067878).

On November 6, 2013, the agency filed a Request to Change a Court Order (§ 388), asking the court to modify mother's visitation with Jordan because Jordan was going to be placed with a relative in Alameda County. The agency also requested that mother's visitation be reduced to one hour one time per week, that the agency be allowed to provide transportation by Amtrak or bus to Alameda only one time per month, and that mother be responsible for arranging and paying for the other three trips per month.

On December 16, 2013, the court granted the agency's motion. It also set the permanency planning hearing for May 8, 2014.

4

On December 19, 2013, mother filed a notice of intent to file a writ petition with respect to Jordan.

On January 21, 2014, mother filed a petition for extraordinary writ with respect to Jordan, challenging the setting of a permanency planning hearing (§ 366.26), but raising no issues with respect to any other orders the court issued at the December 16, 2013, hearing.

## DISCUSSION

In her memorandum of points and authorities, mother raises issues relating to orders the court made at the 12-month and 18-month review hearings. She does not, however, raise any issues relating to any orders the court made at the December 16, 2013, hearing where the court set the permanency planning hearing.

California Rules of Court, rules 8.450-8.452 govern the procedures for initiating dependency writ proceedings in this court. The purpose of writ proceedings is to facilitate review of the juvenile court's order setting the section 366.26 hearing. (Rule 8.450(a).) Further, case law holds that "[a]ll orders issued at a hearing in which a section 366.26 hearing is ordered are subject to section 366.26, subdivision (*l* ) and *must be reviewed by extraordinary writ*." (*In re Tabitha W.* (2006) 143 Cal.App.4th 811, 817, italics added.) However, we are not aware of, nor has mother cited, any authority that allows a party to raise issues related to orders that were not made at the hearing where the date for the section 366.26 hearing was set. Therefore, since mother does not raise any issues relating to the orders the court made at the December 16, 2013, hearing where it set a date for the 366.26 hearing, we deny her petition.

## DISPOSITION

The petition is summarily denied. Our decision is final as to this court immediately.